All right, the next case of the morning is number 17, 11320 Klocke v. Watson, and we'll hear first from Mr. Chaikin when you're ready. Thank you and good morning. May it please the court, counsel. This is a case that has been long coming to this court given the difficulties that federal courts, mostly in Texas, confronting the Texas Anti-SLAPP statute, the Texas Citizens Participation Act, have grappled with in terms of whether the statute applies in federal court proceedings at all, and if so, how it applies procedurally. In mid-July of this year, 2018, Judge Mazant of the Eastern District of Texas joined a growing number of courts in Texas confronted with dismissal motions under the TCPA, and he actually decided two cases in July, one of which we addressed in a letter brief recently to the Court. The other is a case called Thoroughbred Ventures, and in that case, Judge Mazant reminded us, as this Court itself reminded us back in Klocke v. Tannehaus, that the question of the applicability of the TCPA in federal court is an important yet unresolved question. And Judge Mazant found, or adopting the reasoning of this Court's Judge Graves in his dissent in Cuba v. Pylant, concluded, as most of the courts most recently to confront the issue have held, that the Anti-SLAPP statute, the TCPA, cannot apply in federal court proceedings because it very significantly collides with the federal rules of civil procedure, most notably Rules 12 and 56, and that's regardless of whether the statute is classified as substantive or procedural. And one of the important things, I think, for purposes of today's argument and having heard a question asked by Judge Barksdale in another case yesterday, Judge Mazant reminded us that while this issue, with regard to the applicability of the TCPA in federal court proceedings, usually arises under an Erie analysis in diversity cases, in the Thoroughbred Ventures case, he did recognize that the same type of Erie analysis applies in supplemental jurisdiction cases, which this is. This is a case involving a defamation claim that was asserted under supplemental jurisdictional grounds. So in this instance, Judge — or judges, the Court is invited to answer the unanswered question, and the question is whether this Court is going to answer that question in accordance with the sound reasoning and analysis of one of its members already and the only opinion that talks about the applicability of the statute, which is the Judge Graves' dissent in Cuba v. Pylent, and whether it's going to resolve the split among the different district courts in Texas as to the applicability question. In this case, we believe that the Court is not confronted with any type of waiver issues that historically have caused the Court to sidestep the question due to a failure to preserve the question or to raise the issue of the applicability of the statute in federal court cases. And in looking at all of this, Judge, we think that — judges, I should say — that the analysis that Judge Graves gives us in this dissent in Cuba v. Pylent is sound. There is a very, very clear collision and conflict between the Texas CPA and at least Rule 12 and arguably Rule 56. Rule 12 is probably more important only because of the timing under which a Rule 12 analysis would apply relative to the timing of a TCPA issue, given the requirements and timing requirements of that statute. In preparing for this argument, you know, I really had originally intended to focus only on the fact that there is this collision and not focus so much on the question of whether the TCPA is procedural or substantive. But in looking at some cases, it dawned on me — and I think it's important for this Court to note — that this Court can and should find that the TCPA is procedural. And I asked the Court to do so in looking at a case called Kinney v. BCG Attorney Search. It's a Texas Intermediate Court of Appeals case found at 2014 Westlaw 143-2012. It's not published in a reporter. And the importance of that case is as follows. That is a case that involved a Federal question, a Lanham Act claim that was brought in State Court under a concurrent jurisdiction theory. And the — that — the Austin Court of Appeals had concluded and affirmed a trial court decision dismissing the Lanham Act claim under the Texas Civil Practice — under the TCPA. And what's important about that is, is that that tells us that the TCPA can only be procedural because it was substantive — the application of substantive Texas law, i.e., the TCPA if it were substantive, to address a Federal claim would violate the supremacy clause. And I think the Court can glean from that that — that the statute, the TCPA, should not be construed as violating the supremacy clause, and thus it's procedural. As I read the district court's opinion, he never really got to that question. In — in our case, that's correct. And — So what — what — let's go step-by-step through what the district court did, because I am so confused here. Sure. As were we. Well, the facts and what you identify are — are extremely compelling. But at the same time, it seems to me that I just don't understand the procedure that you followed in the district court, because they filed a motion to dismiss, correct? They filed a motion to dismiss under a particular statute, which is not a Federal — It doesn't matter what they filed it under, because in the Federal — I mean, there's no way you're not under the Federal rules, right? 12b-6. I mean, they can call it whatever they want to, but — and your problem was that you responded and you wanted the judge to be more precise. Of course, you should have known that this particular judge doesn't do what lawyers ask him to do. He does what he wants. And — and you did not even file that within the days sought by the local — required by the local rules of the Northern District of Texas. Did you ever file a verified complaint about your allegations? We did not file a verified complaint in the case. Was there ever an affidavit of any sort filed along with the petition or materials that were before the district court? There wasn't. The only thing that I can tell the Court in terms of verified information in the complaint was that we had taken some pre-suit depositions on the authorization of a — of a state district court to investigate the claims and causes of action, but really not the defamation claim itself. And we were hamstrung in particular in this case with regard to bringing forward facts in affidavit format, because as — as you might have gleaned from the record, our client, the young Mr. Klocky, who was deceased. That's correct. But I think to address the Court's question, I — I did not view, nor was the — the motion that was filed for dismissal filed as a 12b-6 motion at all. It couldn't have been because it didn't attack the pleadings under a 12b-6-type theory, and it wasn't filed within the time period that a 12b-6 motion would be filed. And so — What would that time period be? Well, it would have been within the — the 12b period after the filing of the — in service of the complaint. But this was filed pursuant to the time and temporal components of the TCPA, which provides for a filing of a TCPA dismissal motion within 60 days after service of the — of the — of the complaint, or actually petition, if you will, in a — in a case. And it was very specifically limited to not the — the — the typical 12b failure to state a claim, but rather it — it was a — it was a motion seeking dismissal that called upon us as a respondent, if the statute is applicable and the motion is viable procedurally, to — to engage in an extensive evidentiary presentation and analysis. But most importantly in this particular case, as — as Judge Mazant recently wrote in the Thoroughbred Ventures case, if — if, in fact, the statute applies in — in Federal Court cases, then — then in this — and this Court agrees, then in reality, the outcome of this case should be that this Court should find that the motion to dismiss was overruled by operation of law. And the reason for that is, is because the underlying statute, the TCPA, which is the legislation giving rise to this particular type of motion, not — not terribly different than the motion that — that this Court considered in the Passmore v. Baylor case, which was the expert witness report requirement under another Texas civil practice and remedy provision, which was in the medical liability arena, there — there's a particular type of response that is — is required if — if the statute is applicable. And this Court had admonished litigants previously in addressing why it had chosen not to resolve the question of whether the statute applies in Federal Court, to avoid waivers by doing anything that evinces an opportunity to actually — to respond to the — to the motion. And here what we did was kind of faced with a Hobson's choice, and as — as Judge had never written one way or the other on the anti-SLAPP issue, procedurally or substantively, we looked at the law that we were confronted with at the time, including the — an opinion by Judge Boyle in the Northern District that had come out earlier in the insurance safety consultants v. Nugent case. Judge — Judge Boyle had concluded that the — that the TCPA doesn't apply in Federal  Court. McBride disagreed, although I think he didn't read the opinion accurately. So we had that as the law in the district that we were in. We had clear questions concerning how do you — how do you respond and when do you respond. So what are we to do with Henry? So — so Henry never addressed the question of the applicability of the TCPA. It never — it never talks about it. It assumes applicability. And I think in — in a footnote in Block v. Tannehaus, this Court said, look, you know, we're mindful of the Henry decision, but it doesn't reach the question as to whether or not there's a collision between — and anti-SLAPP statute, let alone the TCPA. I sat on a case — maybe it's unpublished, but also where we applied the Louisiana anti-SLAPP statute.  It's been applied. It's been applied a bunch of times. It's been assumed to apply. And in fact, in more circuits, in a majority of circuit courts, irrespective of what our district judges are saying here, it has been applied. And it has been found not to violate ERIE if you treat it in its substantive sense. Well, and to address your comment, Judge Jones, there are certainly different anti-SLAPP statutes. Each state's anti-SLAPP statute is different from the others. And each is measured under a different analysis, circuit by circuit, in terms of the applicability question. The fact remains that there is ample authority in the Fifth Circuit, most recent being the cases that I've just cited, that find that the reasoning by one of this Court's members finding the collision, which clearly exists under an ERIE analysis I mean, there is a direct collision between the TCPA requirements, how you respond to it, and what your burdens and obligations are, and Rule 12 and then 56, which address early dismissal issues in federal court proceedings. And if the TCPA is allowed to collide with the federal rules, then litigants are faced with burdens that are impossible procedurally to meet and substantively. I'm not sure about . . . I don't quite understand that because the judge ruled on a pretty narrow basis here. And he did say that you had an obligation to comply, to file something. He said that you didn't . . . what he says is, Watson says he is entitled to have plaintiff's claims dismissed because they are based on this exercise of his right to free speech. Plaintiff does not disagree. Plaintiff has not made any attempt to establish each essential element of his defamation claims. And then it says a valid defense under the Texas DMA. Plaintiff does not dispute. He did not comply with the DMA. And finally, so in other words, if you just take those basic things as being the core of the statute that is supposed to provide an expeditious defense in this kind of case, then you sort of waived all of it. Well, so we didn't waive anything. I would disagree with that. I mean, what we did was is we said to the court, look, we don't think this statute applies in federal court, and we believe that you need to resolve that antecedent question by resolving our properly filed and timely filed objection, which was not  Let me add, but let me add . . . It was, in fact, a response to it. You do say that there were other students present in the classroom who disagreed with what Watson says he was saying, right? No, we did not say that. I thought there was something about the investigation that went forward, and one of the people at the university had said, we don't have enough information to go after Mr. Clockey. Absolutely. Because there was disputed statements about what Watson said. Yes, and to be clear in response to your question, what we did say in our papers and in the record is that there was nobody who witnessed or heard what was said. There were aspects of the exchange between the two students that were witnessed, but that there were written documents during the investigation where young Mr. Clockey himself had disputed saying any of the things that were attributed to him. So I just want to make sure that the court is clear about what the record did provide in that regard. So you're saying that as a practical matter, you had no access to evidence to support your claim at the time that he filed the motion to dismiss? No, we did have access to evidence and more particularly with regard to evidence that might have been required with regard to responding to the TCPA motion. But we did not access that because we asked the court what procedure the court was going to apply in determining the motion so as to, among other things, then in turn ask the court to obtain that information through discovery which was otherwise prohibited under Rule 26 given the temporal status of the case at the time. And so we could have gone after some evidence and would have found some evidence, but given the procedural quagmire that we were in and not wanting to waive the objection that we had asserted to the mere applicability of the statute at all, which if sustained, we wouldn't have had to respond at all, you know, we were stuck in a quagmire, which is why we asked the court to tell us, A, are you going to apply the statute notwithstanding our objection? And then having preserved that, then we'll go ahead and figure out together what procedure we have to follow given the conflict of Federal procedure and the TCPA prescribed methods. Okay. Okay. Thank you, Judge. Sorry to go on. Okay. Mr. Gibson. May it please the Court, opposing counsel. Good morning. Darren Gibson on behalf of Applee, Nicholas Matthew Watson. In passing the TCPA, the State of Texas has given substantive protections to defendants who are sued in retaliation for expression of their First Amendment rights. And this Court has repeatedly held that those protections are substantive, not only with also this Court ruled that the TCPA itself is substantive in the NCDR case when it found that the collateral doctrine, a collateral order doctrine applied to TCPA orders and that the unreviewability created, resulted from the substantive nature of the TCPA. And so, as the Court, as this Court in NCDR stated, that right is not simply the right to avoid ultimate liability in a SLAP case, but rather it is the right to avoid trial in the first instance. And in fact, they compare the rights and protections of the TCPA to a type of immunity, and that that immunity is clearly something that's very substantive and important, not only— Well, he raises this other issue, to be fair, and that is that you did not file a 12B6 motion. You filed an anti-SLAP motion. Is that correct or not correct? I filed a motion to dismiss pursuant to the TCPA, and it was not characterized as a motion to dismiss under Rule 12. It was characterized as a motion to dismiss pursuant to the Texas— And that's, in fact, how the district judge treated it, right? I think that is. That's correct. So, what is that creature? That's a very interesting question, and I think— Why couldn't you have filed it under 12B6? I could have. In retrospect, I could have filed it in the alternative under the TCPA under 12B6. However, it was my understanding, based on this Court's rulings in Henry and other cases applying anti-SLAP statutes in Federal court as well as the NCDR case, that the TCPA applied in Federal court. And that is why we brought it. Also, the TCPA, in addition to its substantive—or in addition to its quasi-procedural mechanism, also has substantive provisions that come into Federal court. That's including burden shifting. That also includes the right to attorney's fees and other affirmative relief. And so, those substantive rights are not inherent in Rule 12. And so, to make sure that those rights—that my client had those rights in defending himself against state law claims— You could have achieved those objectives by filing a 12B6 based on anti-SLAP. And after the judge had granted that, which he might have since they put up no substantive defense, then you would have said, and we're entitled to attorney's fees. That is a possibility, Your Honor. That is not the way that I did it. But it could have been done that way. Because I'm not quite sure how the issues are postured before us, frankly. I mean, you know, in a sense, this reifies what he said, which is that it posits the direct question of the conflict between the substantive law and Erie. Well, this Court has repeatedly struggled—in that balance where there is a potential conflict, this Court has repeatedly held that the state substantive law can work in conjunction with federal rules of civil procedure. So, for instance, if you look at the All Plaintiffs case, where the Court was asked to determine whether or not Rule 23 governed the distribution of the class element funds or the Texas Unclaimed Property Act governed. The Court found a way to combine those two and have them work in conjunction, such that the District Court was allowed, even though Rule 23 gave the District Court discretion as to how to distribute those funds, the Fifth Circuit said, Court, you should have looked at the Texas Unclaimed Property Act, because that's a substantive right that exists under Texas law, and you can't just ignore that even though Rule 23 gives you discretion. How would you work it in conjunction between Rule 12 or Rule 56 and the TCPA in this instance? Well, there's been a few different models proposed by various federal courts that have looked at this. One model is to say that the TCPA applies, and you can bring a motion to dismiss under the TCPA. The other model is to sort of do what Judge Jones was suggesting and say that the substantive rights are brought with you into federal court, although you may move under Rule 12 or Rule 56. How would you harmonize it with Rule 12 and Rule 56 so that they are still applicable? I would argue that they can work together, that this is an additional means by which a defendant litigating against a state law claim subject to the TCPA can bring a motion to dismiss. Now, other... I'm sorry? That's my question. How? Give me some specifics. You would do exactly what I did. You file a motion to dismiss pursuant to the Texas Citizens Participation Act. But that's not Rule 12. I agree with you. It's not Rule 12. You and I are going in a circle. Just answer my question. Tell me how, if you had taken another course and you had filed it under Rule 12, how would you have gotten the protection of the TCPA consistent with Rule 12? I think the best analogy is qualified immunity. If I would have filed under Rule 12, they could have potentially said, we want limited discovery, and then that can convert a qualified immunity motion to dismiss to a Rule 56 motion to dismiss. But when subject to... When this Court treats a qualified immunity motion, the defendant is not subject to an entire scheme of discovery, where there's very limited discovery as to the specific issue of whether or not qualified immunity applies. And that is a very similar way in which the TCPA could work in this instance. You file a motion to dismiss. They say, hey, I need discovery, and that you could then have a very limited narrow discovery such that the burden shifting applies, which is similar to the qualified immunity, as well as those affirmative rights that are inherent to the TCPA in terms of affirmative relief and attorney's fees. I think that's a very... That would be a way in which these two things could work together, such as the substantive state law applies, but you also are following the federal civil rules. Well, maybe we ought to vacate and remand to do that. I think that would be a potentially appropriate solution. I would prefer, of course, to affirm the district court's decision and judgment, but that's certainly, I would think, not an unreasonable approach to figuring out a way to make these two things work together. I'd also like to point out to the Court... Tell me how each aspect of the TCPA you could make work together within the confines of the bill, the time limitations, et cetera, in the TCPA. How would all that work? I think the time limitations... So under the TCPA, you have 60 days to file your motion to dismiss after service, right? And you didn't file it within 60 days. Yes, we did. You said you didn't. I thought he said it was untimely. Judge McBride says, ignoring the irony, he says... Yes, so... Apparently, overlooking the irony, plaintiff does argue that Watson's motion to dismiss is untimely. The motion was filed within 60 days of the mailing of requests for plaintiff's objection... Oh, sorry. I'm so sorry. Plaintiff's objection is frivolous. And so we filed within the 60 days. And so I think... But the District Court also says that he did not file a response timely within the rules of the Northern District, right? That's correct. And... So the District Court was in sort of melding them together. I think that's correct. The District Court took the TCPA as a separate motion and allowed what I did to be a separate motion and did not look to the procedural aspect of state law and brought those in with a motion and did not apply Rule 12 or Rule 56. And that is something that other courts have done as well. And another approach could be to bring in the substantive and going back to your question, Judge Barksdale, how do those two things work? I think that, you know, you could make it work such that you were required to file either Rule 12B or Rule 12C, similar to a 12B, obviously, within 60 days. And if you don't do that, you could argue that you've waived your right to a TCPA motion. We certainly filed within the 60 days in this instance. Well, you've got the TCPA controlling application of the federal rules. Well, a 12C, you can bring at any time under the pleadings, right? And so 12C does not dictate when you can bring a 12C motion, right? And so you have, what it says is it looks to, 12C would then look to state law to say, if you're bringing a motion to dismiss pursuant to state law, we can make those two things work together. It's similar. Yes, you can make them work together. But again, you're getting the question of, is state law procedure compelling a different result under the federal rules than would otherwise be required? There's no time limit on 12B6 or 12C, and it's just taking over the federal rules in that respect. So I think that the courts have looked at ways— Do you have any other aspects of the TCPA that you can show us how it could work without running over the federal rules? Well, the burden shifting. That aspect of the TCPA is certainly substantive, and similar burden shifting applies in federal courts all the time. The aspect of the TCPA that says that you get attorney's fees if your motion is to dismiss, that is a—the right to attorney's fees is a substantive right that is repeatedly applied based on state law in federal courts. And so I think certainly both of those two aspects, the fundamental aspects of putting the burden on the plaintiff to bring forth evidence to defeat—or to bring forth evidence of a prima facie claim. That is something that is not found in the federal rules, but it's a substantive right to say, I, as a TCPA defendant, am not—or should not be—have to go through litigation and even be subject to trial until the plaintiff can meet that burden. And that's a substantive burden that I think could very easily work in the context similar to a qualified immunity motion in the way that qualified immunity is handled under the federal rules. And qualified immunity, 99% of the time, is under the federal qualified immunity guidance, not under state qualified immunity guidance. That's correct. You're making it sound like there's some rule about qualified immunity that's procedural and it's the federal rules that work in harmony with other federal rules. We're separate here. We're talking about a state procedural rules, not federal. But these state rules are also substantive. And this court has repeatedly found ways to protect those substantive rights in the context of federal rules. Is that what ERIE requires? I'm sorry, say that again. Is that not what ERIE requires? I think it is what ERIE requires. The Texas law gives defendants a protection from frivolous first litigation that interferes with their First Amendment rights. And if the federal courts don't acknowledge that and follow that in some respect, then there is a clear—this totally violates ERIE because there will be every opportunity to contrary to what ERIE requires. And the federal rules can't supersede ERIE. I think you're exactly right, Judge. And that concept is also embodied in the Rule Enabling Act, 28 U.S.C. 2072, which says that a federal rule cannot be applied to the extent it abridges, modifies, or enlarges a substantive right. So to do so would violate the Rules Enabling Act. What is the substantive right under the TCPA that you think under ERIE should be given deference? I think there's at least three. All right, name them. Number one is the right not to stand trial unless they can meet the prima facie obligations. That is a substantive right. This Court has found that that's a substantive right in the NCDR case. And it similarly has found that similar rights under the Louisiana anti-SLAPP statute are applying to the TCPA, I mean the Louisiana statute in federal court, and as well as the predicating analysis under the collateral order doctrine that the Henry Court also applied to the Louisiana statute. Number two, that the right to attorney's fees. That is a right that any defendant who's subject to one of these frivolous anti-SLAPP statutes has the right to under Texas state law. And if this Court were to say that the TCPA doesn't apply, that right would be rendered meaningless. Let me ask you about the Pilant v. Cuba or Cuba v. Pilant case because the plaintiff relies extensively on Judge Graves' dissent. But doesn't the fact of the majority opinion there imply that Judge Graves' dissent is not the law of the circuit? Well, it certainly does. Well, so that's all you need, all she wrote, right? Legally? Certainly, I would agree with that legally. And I think Judge Graves' dissent also abandons this Court's practice as shown in all plaintiffs and the Douglas case that I would like to point out. This is the Douglas case 979 F. 2nd 1128. It's a case from this Court where it was asked to determine whether the federal rule of civil or whether the Texas state law regarding mandatory counterclaims applied. And the context was a borrower brought a declaratory judgment action in federal court to say that the note, the secured note, was not enforceable. And under Texas law, secure lenders have the right to determine whether or not to seek nonjudicial or judicial foreclosure options. And the Texas mandatory counterclaims rule does not require such a counterclaim to be brought in Texas courts. This Court recognized the importance of that right to lenders, to secure lenders under state law, and said we're not going to interpret Rule 39E in a way that mandates abandoning those rights. Those are substantive rights that Texas secured lenders have. And if we were to simply say Rule 39E applies, it would destroy those rights and it would be a violation of the Rules Enabling Act. Let me ask you a question about the precise posture of this appeal, about which I am still confused. Because as I understand it, you file your motion to dismiss, not allegedly 12B6, and they file a response and request for clarification. And the judge says, why would you think, his opinion is saying, why would you think this law does not apply? You didn't meet your burden. And therefore, he grants relief under the TCPA. I can see their notice of appeal applying and say, well, okay, so what they're appealing is an adverse judgment that the TCPA allowed him to challenge attorney's fees, but when he's made no attempt to comply with the TCPA at all or to set forth anything that is based on 12, that would have forfeited, fended off a 12B motion, I'm not quite sure exactly what's before us. Well, I think arguably the only issue before you and the only issue that he even arguably preserved was whether the TCPA applies in federal court. I will admit that in his first response, which he called an objection, it was not an opposition or a response, it was called an objection. The issue of whether or not the TCPA applies in federal court was raised before the district court. That is the only real response that he had. But the judgment is, I dismiss the claim. Right. And you have to dismiss the, I mean, this is a, all right, we'll work it out. Now, arguably, did he waive his argument against dismissal by rather than discussing dismissal, he argued about the applicability of a law in court. It's unclear to me, I have to admit, but I think that's the only issue he arguably preserved. And that is why that's the only issue he discusses in his opening brief. He doesn't address the substantive, whether it's substantive or procedural. Doesn't address the motion for denial of the motion for reconsideration. Yeah, he doesn't address that either, in which, you know, that's waived since it wasn't addressed in his opening brief. And the only issue he waives or he addresses is this potential conflict. He doesn't really address Erie either. He only addresses the conflict under the Shady Grove analysis. What does the Supreme Court's decision in Shady Grove tell us, if anything, in your view about the continuing precedential weight or viability of Henry? So I think that the decision in Shady Grove, it's a plurality, a majority decision for two points, a plurality decision for the third, which in that third is critical here. The fact that that third decision was not, that third point is not a majority decision means it does not control. In that third point, the plurality said, so long as there's a rule, and if that rule arguably touches upon what's at issue, that rule governs and the state law never, I don't even have to look at the state law, it's irrelevant, the rule applies. It's a very, very harsh interpretation, and I would argue an incorrect interpretation of the Rules Enabling Act because it ignores Section 28 U.S.C. 2072. Well, besides that, class actions are just a procedural device. That's exactly true. And the Court in Shady Grove did not even have to go to that because it did not determine that the underlying rule at issue was substantive at all. This Court has already held that the TCPA and similar anti-slap statutes are substantive, that create substantive rights. Therefore, the Court must go to that second step in Shady Grove and determine whether or not the application of the federal rule abridges, modifies, or enlarges the substantive right, and if it does, it cannot apply. That is the Rule Enabling Act. Are you relying on Henry for your statement that our Court has held it is substantive? I'm relying on both Henry and NCDR as well as Texas' own courts as to whether it's substantive. Texas courts have also ruled that the entitlements and protections afforded in the TCPA are substantive, and if they are not substantive and if they are only procedural, they would apply to federal claims in Texas state courts. That would mean that all of a sudden any federal claim brought in a court of general jurisdiction within Texas would be subject to the TCPA. I don't think that's the correct answer. I think the TCPA is substantive and that it applies to Texas state law claims regardless of whether they, where they exist. And to do so respects the fundamental nature of ERIE, the two prongs of ERIE, which is to avoid short-form shopping and to ensure the consistent application of laws, of substantive laws across the courts of this country. I think I've run out of time. Yes. Any additional questions? No. Thank you, Your Honor. Okay, Mr. Chaykin. Sure. Thank you, Judges. I'd like to address a couple of issues in rebuttal. Number one, I would call upon the Court and the panel to take a look at the footnote in with regard to the significance and meaning of the Henry case to this question and in particular to this question as framed by the Texas anti-SLAPP statute versus the Louisiana statute. And most notably, there's language written by a different panel in the Block case recognizing the importance of the unresolved question being answered, suggesting that we noted in Piland that Henry did not address whether under the ERIE doctrine the array of state procedural rules surrounding anti-SLAPP motions to dismiss. You know what? I mean, I just have to say again, Judge Graves wrote a dissent. The dissent is not the law. By definition, the dissent is something that the majority disagreed with. No question. Well, I don't know that I would agree with the conclusory statement that they disagreed with the dissent's findings. Because in fact, as this footnote in Block v. Tannehaus suggests, is that the Court never reached the question of whether the statute applies. And as was true in Culberson v. Likos and in the NCDR case previously, when they talked about the act, when the Court talked about the applicability of the statute, the Court found, well, that wasn't an issue that had been preserved by objection in the underlying proceedings, and therefore, it need not be reached. And so the Court assumed, without deciding the applicability of the statute, that the statute applied, leaving open the question for a case where the issue was properly preserved. In this — and I'd like to also observe that, Judge Bartsdale, you asked the question that proves why we did what we did the way we did it in the proceeding below, which is, how do you reconcile the procedural aspects of the anti-SLAPP statute in a Federal court proceeding? Well, the district court seemed to reconcile them by saying that you filed your response to the motion too late under the rules of the Northern District of Texas. So I — well, so here — and that proves our point here, which is Judge McBride imposed a procedure that is neither prescribed by the Federal rules which govern the issue of dismissals on a pretrial basis, and he didn't — and he didn't — he didn't implement the procedures under the TCPA itself if it applies, because he couldn't — he could not require us to simply file a response. Where has any — where has any of our Fifth Circuit courts applied the, quote, procedures that the TCPA requires? So there hasn't been a lot of attention paid by the Fifth Circuit to that issue. No, that's — that's right. But — but if you were to look at cases like the — Because substantively — because substantively the plaintiffs are not able to bear their burden. Well, they may be able to bear their burden. The question is, is how do they go about doing it without waiving their objection to the applicability of the statute? Well, let me turn it around this way and say, in a case like Henry, the publication apparently felt confident that it could bear its burden on the — on the defense, and the facts were known, and — and as a legal matter, the — the publication was entitled to dismissal, period. In other words, the plaintiff didn't argue that I was prevented from making my case by virtue of the anti-SLAPP law. And — and neither are we arguing that here. You are arguing it because you didn't try to even respond with what the law requires in the district court. Well, we — we — we did respond. We objected to the applicability of the statute, which, if that objection was valid, as we contend that it is, we wouldn't have been required to respond to the TCPA motion substantively at all, which is why we asked for an antecedent ruling on the objection so as to avoid a waiver that this Court continuously fines. I don't understand your argument about waiver at all. You don't understand? OK. Well, I'll try to clarify it for you. You know, the — we — we had — we had the NCDR case that was pending that refused to address the question of the applicability of the statute. Let me just say this. To me — to mine — I don't know what waivers are in federal court, but a waiver is something — it's an acknowledgment, it's — it's doing one thing inconsistent with another position. Well, you could have preserved your objection and said, and we need access to whatever evidence so that we can make our point that we have a claim here. And — and that's, in effect, what we did. We — You did not, because you said — you didn't ask for discovery. I'm sorry, but to be clear, Judge, I respectfully disagree with you. Okay. Because what we did is the following. We had an anti-SLAPP motion. We had a ruling by the Court striking the motion as being untimely, which later on, Judge McBride said our argument concerning timeliness was frivolous after he had stricken the motion for being untimely or not being properly filed. We — we had the concern that Judge Barksdale has raised today, which is, how do you reconcile a response under the federal rules of civil procedure with the requirements under the — under the Texas TCPA? And so what we said is, Judge, we don't want to waive our objection, so here's our objection, and we are asking you to clarify for us and give us an opportunity to respond substantively if you overrule our objection, and if you're going to overrule the objection, then tell us procedurally, because we didn't know. Are we supposed to comply with the local rule motion response provision when the TCPA required a hearing, for example? All right. I'm sorry. I don't mean to argue with you, but I'm just saying — No, you're not arguing. We tried everything we could to avoid waiving anything and asked for an opportunity if Judge McBride disagreed with our objection and overruled it to allow us an opportunity to go ahead and try to proceed under the TCPA. If we could, we didn't know how, so we asked him, okay? And we believe that under the All-Rich Doctrine, he was — he had a motion before him that he properly could have — I suppose you never asked for a pretrial conference. Was there a pretrial conference? You don't get a pretrial conference in Judge McBride's court until he enters a status request order. And so, you know, again, we're in a real Hobson's Choice situation, predicament-wise. Do we make the objection, have it ruled upon, and if it's overruled, then go ahead and do our best to try to figure out how to respond to the thing? It is. So, yeah, okay. Okay. And again, counsel — and I'm out of time, but counsel — You're really out of time. I'm really out, so I'll quit. I thought I was answering your question, so. That's okay. Yeah. Okay. Thank you. We'll look very closely at it. Thank you. Court will be in recess until —